FILED

DEC 1 4 2022

Clerk, U.S. District Court
Texas Eastern

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 6:22-CR-22 |
| v. | § | JUDGE JDK/JDL |
| | § | |
| PETER J. BENNETT (01) | § | |

## **FIRST SUPERSEDING INDICTMENT**

THE UNITED STATES GRAND JURY CHARGES:

### **General Allegations**

At all times relevant to this Indictment:

<u>The Defendant and Associated Companies and Individuals</u>

1.     **Peter J. Bennett** resided in or around Houston, Texas.

2.     Peter J. Bennett, P.C., was a Texas company.  Formed on December 28,

2012, the company is currently active.

3.     Robert O'Neal resided in or around Beaumont, Texas.

4.     Stephen Kash resided in or around Beaumont, Texas, and Winnie, Texas.

5.     Individual 1 resided in or around Lumberton, Texas.

6.     Tree Pool, LLC (Tree Pool), was a Texas company.  Formed on April 4,

2016, the company is currently active.  The Water Buffalo Irrevocable Trust was the

managing member.  **Peter J. Bennett** was the registered agent.

7.     The Water Buffalo Irrevocable Trust was a Texas trust created on April 5,

2016. According to the trust agreement, **Peter J. Bennett** was the settlor and trustee, and

**Indictment – Page 1**

**Peter J. Bennett** and Individual 1 were the beneficiaries of the trust.  In truth and in fact, the trust was created for the benefit of Robert O'Neal.

8.    Tigerlily LLC was a Texas company.  Formed on December 9, 2016, the company is currently active.  The Tigerlilly Irrevocable Trust was the managing member.

9.    The Tigerlilly Irrevocable Trust was a Texas trust created on December 28, 2016.  According to the trust agreement, **Peter J. Bennett** was the settlor and trustee, and **Peter J. Bennett** and Individual 1 were the beneficiaries of the trust.  In truth and in fact, the trust was created for the benefit of Stephen Kash.

10.    Ascend Professional Consulting, Inc. (APC), was a Texas company.  Formed on August 21, 2015, the company is currently inactive.  The company began to operate as Ascend Professional Management, Inc. (APM) on October 9, 2015.  APM is also currently inactive.  Individual 1 was a principal of both companies.  The companies were operated from Beaumont, Texas, in the Eastern District of Texas.

11.    BenefitPro Consulting, LLC (BenefitPro), was a Texas limited liability company.  Formed on April 28, 2016, the company is currently inactive.  APM was the Managing Member.  The company was operated from Beaumont, Texas, in the Eastern District of Texas.

Financial Institutions

12.    JPMorgan Chase Bank, N.A. (JPMorgan) was a "financial institution," as defined by Title 18, United States Code, Section 1956.  It was based in New York, New York, within the Southern District of New York.

Indictment – Page 2

13.     First Financial Bank, N.A. (First Financial) was a "financial institution," as defined by Title 18, United States Code, Section 1956.  It was based in Abilene, Texas, within the Northern District of Texas.

## COUNT 1

<u>Violation</u>:  18 U.S.C. § 1956(h)
(Conspiracy to Commit Money
Laundering)

1.     The General Allegations sections of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From on or about July 6, 2016, and continuing through on or about October 23, 2018, the exact dates being unknown, in the Eastern District of Texas, and elsewhere, the defendant, **Peter J. Bennett**, did knowingly and willfully combine, conspire, and agree with Robert O'Neal, Stephen Kash, and others, both known and unknown to the Grand Jury, to commit offenses against the United States in violation of 18 U.S.C. §§ 1956 and 1957, that is:

  a.     to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, illegal remunerations, a violation of 42 U.S.C. § 1320a-7b(b), and conspiracy to commit illegal remunerations, a violation of 18 U.S.C. § 371, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the

financial transactions represented the proceeds of some form of

unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

b.     to knowingly engage and attempt to engage, in monetary

transactions by, through, and to a financial institution, affecting

interstate and foreign commerce, in criminally derived property of a

value greater than $10,000, and such property having been derived

from a specified unlawful activity, that is, illegal remunerations, a

violation of 42 U.S.C. § 1320a-7b(b), and conspiracy to commit

illegal remunerations, a violation of 18 U.S.C. § 371, in violation of

18 U.S.C. § 1957.

### **Manner and Means of the Conspiracy**

The manner and means used to accomplish the objectives of the conspiracy

included, among others, the following:

3.     Robert O'Neal and Stephen Kash obtained proceeds and property derived

from specified unlawful activity, namely a health care kickback conspiracy through

which physicians were incentivized to make referrals to rural hospitals and affiliate labs

in exchange for kickbacks which were disguised as investment returns; and in which

marketers were incentivized to order, arrange for, or recommend the ordering of services

from rural hospitals and affiliated labs in violation of the Anti-Kickback Statute.

4.     **Peter J. Bennett** laundered proceeds and property derived from specified

unlawful activity on behalf of Robert O'Neal and Stephen Kash.

5.      **Peter J. Bennett** created sham trusts and shell corporations and opened associated bank accounts through which he laundered the proceeds and property derived from specified unlawful activity (hereinafter "kickback proceeds").

6.      **Peter J. Bennett** advised his clients, Robert O'Neal and Stephen Kash, that they would not have direct access to the funds nor visibility into the accounts.

7.      **Peter J. Bennett** utilized bank accounts established in various business names.  The business names included Tree Pool, Water Buffalo Irrevocable Trust, and Tigerlilly Irrevocable Trust, among others.

8.      **Peter J. Bennett** also used his Interest on Lawyers' Trust Account (IOLTA), his law firm operating account, and a personal bank account to launder the kickback proceeds.

9.      **Peter J. Bennett** and Individual 1 exchanged false and fraudulent invoices that were used to facilitate and conceal the money laundering conspiracy.

10.     On or about the following dates, Individual 1 wired kickback proceeds from APC (First Financial account ending in 4469) to Tree Pool (JPMorgan account ending in 8678):

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct |
|------|--------|----------------------|---------------------|
| 10/14/16 | $200,000.00 | First Financial/4469 | JPMorgan/8678 |
| 11/7/16 | $200,000.00 | First Financial/4469 | JPMorgan/8678 |
| 11/14/16 | $30,000.00 | First Financial/4469 | JPMorgan/8678 |
| 12/29/16 | $1,008,666.00 | First Financial/4469 | JPMorgan/8678 |

11.     On or about the following dates, Individual 1 wired kickback proceeds from

BenefitPro (First Financial account ending in 7031) to Tree Pool:

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct |
|------|--------|----------------------|---------------------|
| 12/26/17 | $360,439.70 | First Financial/7031 | JPMorgan/8678 |
| 12/29/17 | $62,601.01 | First Financial/7031 | JPMorgan/8678 |

12.     On or about the following date, Individual 1 wired kickback proceeds from

APC (First Financial account ending in 4469) to Tigerlilly Irrevocable Trust (JPMorgan

account ending in 1265):

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct |
|------|--------|----------------------|---------------------|
| 12/29/16 | $191,334.00 | First Financial/4469 | JPMorgan/1265 |

13.     On or about the following dates, Individual 1 wired kickback proceeds from

BenefitPro (First Financial account ending in 7031) to Tigerlilly Irrevocable Trust:

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct |
|------|--------|----------------------|---------------------|
| 12/29/16 | $248,000.00 | First Financial/7031 | JPMorgan/1265 |
| 12/26/17 | $360,439.70 | First Financial/7031 | JPMorgan/1265 |

14.     On or about the following dates, **Peter J. Bennett** transferred kickback

proceeds from Tree Pool to the Water Buffalo Irrevocable Trust (JPMorgan account

ending in 2321):

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct |
|------|--------|----------------------|---------------------|
| 10/21/16 | $200,000.00 | JPMorgan/8678 | JPMorgan/2321 |
| 11/15/16 | $200,000.00 | JPMorgan/8678 | JPMorgan/2321 |
| 12/29/16 | $1,009,666.00 | JPMorgan/8678 | JPMorgan/2321 |
| 1/2/18 | $150,000.00 | JPMorgan/8678 | JPMorgan/2321 |

15.     **Peter J. Bennett** transferred kickback proceeds for the benefit of Robert

O'Neal, as follows:

a. From on or about November 22, 2016, and continuing through on or about July 27, 2017, **Peter J. Bennett** wrote checks and authorized wire transfers from the Water Buffalo Irrevocable Trust account totaling $310,281.38 to Company 1, a custom home builder in Beaumont, Texas, for renovations on Robert O'Neal's home, as follows:

| Date | Amount | Originating Bank/Acct | Transaction Type |
|---|---|---|---|
| 11/22/16 | $54,549.00 | JPMorgan/2321 | Wire |
| 1/12/17 | $80,027.17 | JPMorgan/2321 | Check #1002 |
| 2/8/17 | $17,748.77 | JPMorgan/2321 | Wire |
| 3/9/17 | $81,015.41 | JPMorgan/2321 | Wire |
| 5/10/17 | $66,035.31 | JPMorgan/2321 | Wire |
| 7/27/17 | $10,905.72 | JPMorgan/2321 | Check #1011 |

b. On or about May 17, 2017, **Peter J. Bennett** wrote a check to himself from the Water Buffalo Irrevocable Trust account, deposited the check into his Peter J. Bennett, P.C. account (JPMorgan account ending in 3670), and then wrote a check in the same amount payable to Company 1 from his PC account, as follows:

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct or Destination |
|---|---|---|---|
| 5/17/17 | $3,893.00 | JPMorgan/2321 | JPMorgan/3670 |
| 5/17/17 | $3,893.00 | JPMorgan/3670 | Check #5788 |

c. On or about February 8, 2017, **Peter J. Bennett** withdrew funds from the Water Buffalo Irrevocable Trust account to purchase a cashier's check from JPMorgan payable to Company 2, a luxury automobile dealership in Houston, Texas, for the purchase of a 2014 Mercedes E350 titled in the name of Robert O'Neal, as follows:

| Date | Amount | Originating Bank/Acct | Destination |
|---|---|---|---|
| 2/8/17 | $32,027.28 | JPMorgan/2321 | JPMorgan CC#9534508392 |
| 2/8/17 | $32,027.28 | JPMorgan CC#9534508392 | Company 2 |

d. On or about December 6, 2017, **Peter J. Bennett** transferred kickback proceeds from the Water Buffalo Irrevocable Trust account and from the Tigerlilly Irrevocable Trust account through other financial accounts, including his personal bank account (JPMorgan account ending in 5563) and his Peter J. Bennett, P.C. account, to Company 3, a company based in The Woodlands, Texas, in order to pay a settlement for the benefit of Robert O'Neal, as follows:

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct or Destination |
|------|--------|-----------------------|-------------------------------------|
| 12/6/17 | $55,000.00 | JPMorgan/2321 | JPMorgan/5563 |
| 12/6/17 | $120,000.00 | JPMorgan/1265 | JPMorgan/5563 |
| 12/6/17 | $150,000.00 | JPMorgan/5563 | JPMorgan/3670 |
| 12/6/17 | $150,000.00 | JPMorgan/3670 | Wire to Company 3 |

e. On or about May 8, 2018, **Peter J. Bennett** transferred kickback proceeds from the Water Buffalo Irrevocable Trust account and from the Tigerlilly Irrevocable Trust account through other financial accounts, including his personal bank account and his Peter J. Bennett, P.C. IOLTA trust account (JPMorgan account ending in 4037), to Company 3, in order to pay a settlement for the benefit of Robert O'Neal, as follows:

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct or Destination |
|------|--------|-----------------------|-------------------------------------|
| 5/8/18 | $50,000.00 | JPMorgan/2321 | JPMorgan/5563 |
| 5/8/18 | $100,000.00 | JPMorgan/1265 | JPMorgan/5563 |
| 5/8/18 | $150,000.00 | JPMorgan/5563 | JPMorgan/4037 |
| 5/8/18 | $150,000.00 | JPMorgan/4037 | Wire to Company 3 |

16. **Peter J. Bennett** transferred kickback proceeds for the benefit of Stephen Kash, as follows:

a. On or about December 30, 2016, and on or about December 29, 2017, **Peter J. Bennett** wrote checks totaling $130,000.00 from the Tigerlilly Irrevocable Trust account to Entity 1, a church in Beaumont, Texas, as follows:

| Date | Amount | Originating Bank/Acct | Transaction Type |
|------|--------|----------------------|------------------|
| 12/30/16 | $66,000.00 | JPMorgan/1265 | Check #9991 |
| 12/29/17 | $64,000.00 | JPMorgan/1265 | Check #104 |

b. On or about November 10, 2017, **Peter J. Bennett** wrote a $16,000 check from the Tigerlilly Irrevocable Trust account to Company 4, a contractor in Beaumont, Texas, for a construction project on Stephen Kash's property.

c. On or about April 30, 2018, **Peter J. Bennett** withdrew $99,064.02 from the Tigerlilly Irrevocable Trust account in order to purchase a cashier's check payable to Company 5, a title company in Chambers County, Texas, for the purchase of 525 5th Street, Winnie, Texas 77665.

d. On or about May 1, 2018, **Peter J. Bennett** withdrew $10,000 in cash from the Tigerlilly Irrevocable Trust account and provided it to Stephen Kash.

All in violation of 18 U.S.C. § 1956(h).

## COUNT 2

Violation:  18 U.S.C. § 371
(Conspiracy to Operate an
Unlicensed Money Transmitting
Business)

1.      The General Allegations sections of this indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From on or about July 6, 2016, and continuing through on or about October 23, 2018, the exact dates being unknown, in the Eastern District of Texas, and elsewhere, the defendant, **Peter J. Bennett**, did knowingly and willfully combine, conspire, and agree with Robert O'Neal, Stephen Kash, and others, both known and unknown to the Grand Jury, to commit offenses against the United States in violation of 18 U.S.C. § 1960, that is:

> to knowingly conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmitting business which affected interstate or foreign commerce in some manner or degree without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable, or while failing to comply with the money transmitting business registration requirements under 31 U.S.C. § 5330 or regulations prescribed under that section.

**Purpose of the Conspiracy**

3.      It was the purpose of the conspiracy for the defendant to operate an unlicensed money transmitting business in order to unlawfully and unjustly enrich himself and his co-conspirators by transmitting funds on behalf of Robert O'Neal and Stephen Kash.

**Manner and Means of the Conspiracy**

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      To achieve the goals of the conspiracy, **Peter J. Bennett** operated an unlicensed money transmitting business.

5.      **Peter J. Bennett** operated an unlicensed money transmitting business without an appropriate money transmitting license in the State of Texas where such operation is punishable as a felony under State law.

6.      **Peter J. Bennett** failed to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, and the regulations prescribed under such section.

7.      **Peter J. Bennett** created sham trusts and shell corporations and opened associated bank accounts through which he transmitted money.

8.      **Peter J. Bennett** advised his clients, Robert O'Neal and Stephen Kash, that they would not have direct access to the funds nor visibility into the accounts.

9.      **Peter J. Bennett** utilized bank accounts established in various business names.  The business names included Tree Pool, Water Buffalo Irrevocable Trust, and Tigerlilly Irrevocable Trust, among others.

10.     **Peter J. Bennett** also used his Interest on Lawyers' Trust Account (IOLTA), his law firm operating account, and a personal bank account to transmit money.

11.     **Peter J. Bennett** and Individual 1 exchanged false and fraudulent invoices that were used to facilitate and conceal the nature of the money transmitting business.

12.     **Peter J. Bennett** opened and controlled bank accounts, under false and fictitious pretenses, in order to operate an unlicensed money transmitting business.

13.     Monies were deposited by Individual 1 into bank accounts under the control of **Peter J. Bennett** and were later transferred by **Bennett** at the direction of Robert O'Neal and Stephen Kash.

14.     **Peter J. Bennett** transmitted money on behalf of Robert O'Neal and Stephen Kash in order to pay bills, make payroll, pay business operating expenses, and make various purchases.

15.     **Peter J. Bennett's** unlicensed money transmitting business provided Robert O'Neal and Stephen Kash with a means to transfer money outside of the conventional financial institutions system.

16.     During and in furtherance of the conspiracy, **Peter J. Bennett** and others acting at his direction engaged in approximately 60 financial transactions involving more than $2,500,000.

17.     Ultimately, **Peter J. Bennett** retained for his own benefit more than $850,000 of the funds that Robert O'Neal and Stephen Kash had entrusted to him.

## Overt Acts

In furtherance of the conspiracy and to achieve its objects and purpose, the following overt acts, among others, were committed in the Eastern District of Texas and elsewhere:

18.     On or about the following dates, Individual 1 wired funds from APC (First Financial account ending in 4469) to Tree Pool (JPMorgan account ending in 8678):

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct |
|------|--------|-----------------------|----------------------|
| 10/14/16 | $200,000.00 | First Financial/4469 | JPMorgan/8678 |
| 11/7/16 | $200,000.00 | First Financial/4469 | JPMorgan/8678 |
| 11/14/16 | $30,000.00 | First Financial/4469 | JPMorgan/8678 |
| 12/29/16 | $1,008,666.00 | First Financial/4469 | JPMorgan/8678 |

19.     On or about the following dates, Individual 1 wired funds from BenefitPro (First Financial account ending in 7031) to Tree Pool:

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct |
|------|--------|-----------------------|----------------------|
| 12/26/17 | $360,439.70 | First Financial/7031 | JPMorgan/8678 |
| 12/29/17 | $62,601.01 | First Financial/7031 | JPMorgan/8678 |

20.     On or about the following date, Individual 1 wired funds from APC (First Financial account ending in 4469) to Tigerlilly Irrevocable Trust (JPMorgan account ending in 1265):

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct |
|------|--------|-----------------------|----------------------|
| 12/29/16 | $191,334.00 | First Financial/4469 | JPMorgan/1265 |

21.   On or about the following dates, Individual 1 wired funds from BenefitPro (First Financial account ending in 7031) to Tigerlilly Irrevocable Trust:

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct |
| --- | --- | --- | --- |
| 12/29/16 | $248,000.00 | First Financial/7031 | JPMorgan/1265 |
| 12/26/17 | $360,439.70 | First Financial/7031 | JPMorgan/1265 |

22.   On or about the following dates, **Peter J. Bennett** transmitted money from Tree Pool to the Water Buffalo Irrevocable Trust (JPMorgan account ending in 2321):

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct |
| --- | --- | --- | --- |
| 10/21/16 | $200,000.00 | JPMorgan/8678 | JPMorgan/2321 |
| 11/15/16 | $200,000.00 | JPMorgan/8678 | JPMorgan/2321 |
| 12/29/16 | $1,009,666.00 | JPMorgan/8678 | JPMorgan/2321 |
| 1/2/18 | $150,000.00 | JPMorgan/8678 | JPMorgan/2321 |

23.   **Peter J. Bennett** transmitted money at the direction of Robert O'Neal, as follows:

a.   From on or about November 22, 2016, and continuing through on or about July 27, 2017, **Peter J. Bennett** wrote checks and authorized wire transfers from the Water Buffalo Irrevocable Trust account totaling $310,281.38 to Company 1, a custom home builder in Beaumont, Texas, for renovations on Robert O'Neal's home, as follows:

| Date | Amount | Originating Bank/Acct | Transaction Type |
| --- | --- | --- | --- |
| 11/22/16 | $54,549.00 | JPMorgan/2321 | Wire |
| 1/12/17 | $80,027.17 | JPMorgan/2321 | Check #1002 |
| 2/8/17 | $17,748.77 | JPMorgan/2321 | Wire |
| 3/9/17 | $81,015.41 | JPMorgan/2321 | Wire |
| 5/10/17 | $66,035.31 | JPMorgan/2321 | Wire |
| 7/27/17 | $10,905.72 | JPMorgan/2321 | Check #1011 |

b. On or about May 17, 2017, **Peter J. Bennett** wrote a check to himself from the Water Buffalo Irrevocable Trust account, deposited the check into his Peter J. Bennett, P.C. account (JPMorgan account ending in 3670), and then wrote a check in the same amount payable to Company 1 from his PC account, as follows:

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct or Destination |
|------|--------|-----------------------|-------------------------------------|
| 5/17/17 | $3,893.00 | JPMorgan/2321 | JPMorgan/3670 |
| 5/17/17 | $3,893.00 | JPMorgan/3670 | Check #5788 |

c. On or about February 8, 2017, **Peter J. Bennett** withdrew funds from the Water Buffalo Irrevocable Trust account to purchase a cashier's check from JPMorgan payable to Company 2, a luxury automobile dealership in Houston, Texas, for the purchase of a 2014 Mercedes E350 titled in the name of Robert O'Neal, as follows:

| Date | Amount | Originating Bank/Acct | Destination |
|------|--------|-----------------------|-------------|
| 2/8/17 | $32,027.28 | JPMorgan/2321 | JPMorgan CC#9534508392 |
| 2/8/17 | $32,027.28 | JPMorgan CC#9534508392 | Company 2 |

d. On or about December 6, 2017, **Peter J. Bennett** transmitted money from the Water Buffalo Irrevocable Trust account and from the Tigerlilly Irrevocable Trust account through other financial accounts, including his personal bank account (JPMorgan account ending in 5563) and his Peter J. Bennett, P.C. account, to Company 3, a company based in The Woodlands, Texas, in order to pay a settlement for the benefit of Robert O'Neal, as follows:

| Date | Amount | Originating Bank/Acct | Depositing Bank/Acct or Destination |
|------|--------|-----------------------|-------------------------------------|
| 12/6/17 | $55,000.00 | JPMorgan/2321 | JPMorgan/5563 |
| 12/6/17 | $120,000.00 | JPMorgan/1265 | JPMorgan/5563 |
| 12/6/17 | $150,000.00 | JPMorgan/5563 | JPMorgan/3670 |
| 12/6/17 | $150,000.00 | JPMorgan/3670 | Wire to Company 3 |

e.  On or about May 8, 2018, **Peter J. Bennett** transmitted money from the Water Buffalo Irrevocable Trust account and from the Tigerlilly Irrevocable Trust account through other financial accounts, including his personal bank account and his Peter J. Bennett, P.C. IOLTA trust account (JPMorgan account ending in 4037), to Company 3, in order to pay a settlement for the benefit of Robert O'Neal, as follows:

| 5/8/18 | $50,000.00 | JPMorgan/2321 | JPMorgan/5563 |
| 5/8/18 | $100,000.00 | JPMorgan/1265 | JPMorgan/5563 |
| 5/8/18 | $150,000.00 | JPMorgan/5563 | JPMorgan/4037 |
| 5/8/18 | $150,000.00 | JPMorgan/4037 | Wire to Company 3 |

24.     **Peter J. Bennett** transmitted money at the direction of Stephen Kash, as follows:

a.  On or about December 30, 2016, and on or about December 29, 2017, **Peter J. Bennett** wrote checks totaling $130,000.00 from the Tigerlilly Irrevocable Trust account to Entity 1, a church in Beaumont, Texas, as follows:

| Date | Amount | Originating Bank/Acct | Transaction Type |
| --- | --- | --- | --- |
| 12/30/16 | $66,000.00 | JPMorgan/1265 | Check #9991 |
| 12/29/17 | $64,000.00 | JPMorgan/1265 | Check #104 |

b.  On or about November 10, 2017, **Peter J. Bennett** wrote a $16,000 check from the Tigerlilly Irrevocable Trust account to Company 4, a contractor in Beaumont, Texas, for a construction project on Stephen Kash's property.

c.  On or about April 30, 2018, **Peter J. Bennett** withdrew $99,064.02 from the Tigerlilly Irrevocable Trust account in order to purchase a cashier's check payable to Company 5, a title company in Chambers County, Texas, for the purchase of 525 5th Street, Winnie, Texas 77665.

d.  On or about May 1, 2018, **Peter J. Bennett** withdrew $10,000 in cash from the Tigerlilly Irrevocable Trust account and provided it to Stephen Kash.

All in violation of 18 U.S.C. § 371.

## COUNT 3

Violation:  18 U.S.C. § 1621
(Perjury)

1.      On or about December 17, 2019, in the Eastern District of Texas, the

defendant, **Peter J. Bennett**, having duly taken an oath, before Tramy T. Vo, a notary

public in the State of Texas, during an investigation duly authorized by the United States

Department of Justice (the Department), a case in which 31 U.S.C. § 3733 authorizes an

oath to be administered, that he would testify, declare, depose, and certify truly, and that

any written testimony, declaration, deposition, or certificate by him subscribed, is true,

did willfully and knowingly and contrary to said oath state and subscribe material matter

which he did not believe to be true, that is to say:

2.      At the time and place aforesaid the Department was conducting an

investigation into the practices and financial arrangements of laboratories and hospitals,

and their executives, employees, and recruiters, as well as affiliated physicians, to

determine whether the individuals and entities had violated the False Claims Act (FCA),

31 U.S.C. §§ 3729–33.  It was material to the aforesaid investigation to determine which

persons, if any, provided services to Tigerlily LLC, as well as the nature of the services

and the time period thereof.

3.      At the time and place aforesaid in paragraph 1, **Peter J. Bennett**, being

under oath as aforesaid, stated and subscribed in a certificate, falsely in written answers

to interrogatories propounded in Civil Investigative Demand No. 19-31 by the

Department with respect to the aforesaid material matter as follows:

"Q. 1. Identify, for Tigerlily LLC: d. Each Person who provided services to Tigerlily LLC, and describe the services provided and the time period thereof.  A. W.T.H. provided consulting services to Tigerlily LLC from May 1, 2016 through December 31, 2017."

4.      The aforesaid statement of **Peter J. Bennett**, subscribed in a written certificate by him, as he then and there well knew and believed, was false in that W.T.H. did not provide consulting services to Tigerlily LLC.  Rather, W.T.H. paid Tigerlily Irrevocable Trust through APC and BenefitPro for consulting services Tigerlily LLC purportedly provided to APC and BenefitPro.

All in violation of 18 U.S.C. § 1621.

## COUNT 4

Violation:  18 U.S.C. § 1621
(Perjury)

1.      On or about December 17, 2019, in the Eastern District of Texas, the

defendant, **Peter J. Bennett**, having duly taken an oath, before Tramy T. Vo, a notary

public in the State of Texas, during an investigation duly authorized by the United States

Department of Justice, a case in which 31 U.S.C. § 3733 authorizes an oath to be

administered, that he would testify, declare, depose, and certify truly, and that any written

testimony, declaration, deposition, or certificate by him subscribed, is true, did willfully

and knowingly and contrary to said oath state and subscribe material matter which he did

not believe to be true, that is to say:

2.      At the time and place aforesaid the Department was conducting an

investigation into the practices and financial arrangements of laboratories and hospitals,

and their executives, employees, and recruiters, as well as affiliated physicians, to

determine whether the individuals and entities had violated the False Claims Act (FCA),

31 U.S.C. §§ 3729–33.  It was material to the aforesaid investigation to determine which

persons, if any, provided services to Tree Pool LLC, as well as the nature of the services

and the time period thereof.

3.      At the time and place aforesaid in paragraph 1, **Peter J. Bennett**, being

under oath as aforesaid, stated and subscribed in a certificate, falsely in written answers

to interrogatories propounded in Civil Investigative Demand No. 19-32 by the

Department with respect to the aforesaid material matter as follows:

**Indictment – Page 20**

"Q. 1. Identify, for Tree Pool LLC: d. Each Person who provided services to Tree Pool LLC, and describe the services provided and the time period thereof.   A. W.T.H. provided consulting services to Tree Pool LLC from May 1, 2016 through December 31, 2017."

4.      The aforesaid statement of **Peter J. Bennett**, subscribed in a written certificate by him, as he then and there well knew and believed, was false in that W.T.H. did not provide consulting services to Tree Pool LLC.  Rather, W.T.H. paid Tree Pool LLC through APC and BenefitPro for consulting services Tree Pool LLC purportedly provided to APC and BenefitPro.

All in violation of 18 U.S.C. § 1621.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### Pursuant to 18 U.S.C. § 982(a)(1)

1.     The allegations contained in Counts 1 and 2 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest.

2.     Upon conviction of any violation of 18 U.S.C. §§ 1956, 1957, or 1960, the defendant, **Peter J. Bennett**, shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

3.     The property which is subject to forfeiture, includes but is not limited to the following:

> A sum of money equal to $2,724,080.41 in United States currency, representing the amount of property involved in the offense alleged in the indictment, for which the defendant is personally liable.

4.     Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

> a.  Cannot be located upon the exercise of due diligence;
>
> b.  Has been transferred, or sold to, or deposited with a third party;
>
> c.  Has been placed beyond the jurisdiction of the Court;
>
> d.  Has been substantially diminished in value; or
>
> e.  Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendant up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of the defendant, **Peter J. Bennett**.

5.      By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendant has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1).

All pursuant to 18 U.S.C. § 982(a)(1) and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

12-14-2022
Date

BRIT FEATHERSTON
UNITED STATES ATTORNEY

_____
NATHANIEL C. KUMMERFELD
ASSISTANT UNITED STATES ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 6:22-CR-22 |
| v. | § | JUDGE JDK/JDL |
| | § | |
| PETER J. BENNETT (01) | § | |

## NOTICE OF PENALTY

### COUNT 1

VIOLATION:          18 U.S.C. § 1956(h)
                    Conspiracy to Commit Money Laundering

PENALTY:            Imprisonment of not more than twenty (20) years; the
                    greater of a fine not to exceed $500,000 or twice the
                    value of the monetary instrument or funds involved in
                    the transportation, transmission, or transfer, whichever
                    is greater, or both such imprisonment and fine; and a
                    term of supervised release of not more than three (3)
                    years.

SPECIAL ASSESSMENT: $100.00

### COUNT 2

VIOLATION:          18 U.S.C. § 371
                    Conspiracy to Operate an Unlicensed Money
                    Transmitting Business

PENALTY:            Imprisonment of not more than five (5) years; the
                    greater of a fine not to exceed $250,000, a fine not to
                    exceed two times the gross gain to the Defendant, or a
                    fine not to exceed two times the loss to the victim, or
                    both such imprisonment and fine; and a term of
                    supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00

## **COUNTS 3-4**

VIOLATION:                18 U.S.C. § 1621
                          Perjury

PENALTY:                  Imprisonment of not more than five (5) years; the
                          greater of a fine not to exceed $250,000, a fine not to
                          exceed two times the gross gain to the Defendant, or a
                          fine not to exceed two times the loss to the victim, or
                          both such imprisonment and fine; and a term of
                          supervised release of not more than three (3) years.

SPECIAL ASSESSMENT:       $100.00 each count